# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1089

_____

Jerald Ramlet,                              *
                                            *
            Appellant,                      *
                                            *    Appeal from the United States
v.                                          *    District Court for the District of
                                            *    Minnesota.
E.F. Johnson Company,                       *
                                            *
            Appellee.                       *

_____

Submitted: September 27, 2007
Filed: November 16, 2007

_____

Before BENTON, BOWMAN, and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

Jerald L. Ramlet appeals the district court's[1] grant of summary judgment to E.F. Johnson Company on his claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), and the Minnesota Human Rights Act (MHRA), Minn. Stat. §363A.08(2). Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

# I.

In 2001, E.F. Johnson hired Ramlet as Vice President of Sales. In 2003, he voluntarily accepted a different position, Director of Sales for the Central United States. He was initially responsible for sales in fourteen states, although three states were later deleted but two different states added.

In 2004, Ramlet began reporting to John Suzuki, who had assumed his former job as Vice President of Sales. In 2005, due to Ramlet's low sales numbers and concentration of phone calls within Minnesota (which accounted for only one percent of his business), Suzuki suspected that Ramlet was working for another company, in violation of E.F. Johnson's ethics code.

On July 5, 2005, Suzuki relayed his concerns to Brenda S. Jackson, Executive Vice President of Sales and Marketing. They decided to instruct Ramlet to devise a territory transition plan, reassigning six of Ramlet's states to two other salespersons (ages 54 and 57). Additionally, without telling Ramlet, Jackson instructed the IT department to copy the files from his company-provided laptop. Reviewing the copied files, Jackson discovered: a business plan that listed Ramlet as an officer several times; e-mail communications between Ramlet and his wife that Jackson believed indicated they were starting a business; and e-mail communications between Ramlet and a former co-worker that Jackson believed indicated Ramlet visited strip clubs and/or solicited prostitutes while on business trips.

Jackson informed E.F. Johnson's president, who instructed her to work with Michael B. Gamble, Vice President of Administration. Jackson recommended to Gamble that Ramlet be terminated; Gamble agreed. On August 18, 2005, Gamble and Suzuki informed Ramlet that his employment was terminated because he was the owner and president of another business. While Suzuki e-mailed the staff to announce Ramlet's termination, Gamble and Ramlet met. Ramlet denied any involvement with another business. Gamble agreed to delay the termination so he could investigate further.

Meanwhile, two E.F. Johnson employees contacted Ramlet about comments by Suzuki. One told Ramlet that, over a year before, Suzuki had said he wanted to hire "a bunch of young, dumb, and full of cum guys." Another (former) employee told Ramlet that Suzuki had said "he intended to hire 'young studs' to replace the older sales people" (the date of this statement is not clear but was between May 2004 and April 2005).

After further investigation, Ramlet's termination was made effective September 2, 2005. He was 42 years old. Ramlet received a termination letter, listing three reasons: "(i) failure to meet satisfactory sales activity; (ii) failure to meet revenue objectives; and (iii) a willful failure to perform duties with the Company." Ramlet's remaining seven states were – after temporary arrangements – permanently reassigned to Rich Gruitch, a new hire age 41, and Joe Heersche, a current salesperson age 37.

Ramlet sued E.F. Johnson, claiming age discrimination in violation of the ADEA and the MHRA and a variety of state law claims. The district court granted E.F. Johnson summary judgment on the age discrimination claims, and refused supplemental jurisdiction over the other state law claims. Ramlet appeals.

II.

This court reviews the grant of summary judgment *de novo*, viewing the record in the light most favorable to the non-moving party. **Lewis v. St. Cloud State Univ.**, 467 F.3d 1133, 1135 (8th Cir. 2006). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c)**; **E.E.O.C. v. City of Independence, Mo.**, 471 F.3d 891, 894 (8th Cir. 2006).

The ADEA provides: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." **29 U.S.C. § 623(a)(1)**. MHRA age discrimination claims are

analyzed under the same framework. *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 855 (8th Cir. 2003). An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 873 (8th Cir. 2007).

A.

Ramlet argues that Suzuki's comments are direct evidence of age discrimination. "[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004), *quoting Thomas v. First Nat'l Bank of Wynne*, 111 F.3d 64, 66 (8th Cir. 1997). In this context, whether evidence is direct depends on its causal strength. *Id.* "'[D]irect evidence' does not include 'stray remarks in the workplace,' 'statements by nondecisionmakers,' or 'statements by decisionmakers unrelated to the decisional process itself.'" *Browning v. President Riverboat Casino-Missouri, Inc.*, 139 F.3d 631, 635 (8th Cir. 1998), *quoting Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989).

Suzuki's comments are not direct evidence. Assuming Suzuki was a decisionmaker, Ramlet has not demonstrated a specific link between the comments and his termination. The comments were not related to the decisional process as the most recent occurred at least four months before Ramlet's termination, and both were made to employees not involved in the decisional process. *See, e.g., Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 934 (8th Cir. 2006); *Arraleh v. County of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006). Further, an inference is required to connect the statements to Ramlet, as they do not mention him or indicate that Suzuki considered him "older." *See Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 725 (8th Cir. 2001) ("Making this comment into evidence of age animus requires an inference, and

the comment therefore does not directly reflect an attitude of discrimination based on age."). Standing alone, Suzuki's comments are not sufficient to find that age discrimination actually motivated Ramlet's termination. *See Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449-50 (8th Cir. 1993) (repeated statements that company was "young, mean and lean," in addition to other evidence and corporate planning documents emphasizing youth, support an inference of age discrimination).

B.

Ramlet argues that he has created an inference of discrimination. Under the *McDonnell Douglas* burden-shifting framework, the plaintiff initially has the burden to establish a prima facie case of discrimination. *McDonnell Douglas Corp.*, 411 U.S. at 802. A prima facie case creates a rebuttable presumption of discrimination. *Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004). The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for age discrimination. *Haas v. Kelly Servs., Inc.*, 409 F.3d 1030, 1035 (8th Cir. 2005). At all times, the ultimate burden of persuasion is on the plaintiff. *Lewis*, 467 F.3d at 1137.

To satisfy the prima facie burden in an age discrimination termination case, Ramlet must show he was: (1) a member of the protected class, i.e., at least 40 years old; (2) qualified for his position; (3) terminated; and (4) replaced by someone sufficiently younger to permit an inference of age discrimination. *McGinnis*, 496 F.3d at 875. In reduction in force (RIF) cases where the plaintiff's duties are either eliminated or redistributed to remaining workers, the fourth element is satisfied by showing that age was a factor in the termination. *Id.* at 875 n.4 (proof that age was a factor in the termination is "needed only in reduction in force cases"); *Hitt v. Harsco Corp.*, 356 F.3d 920, 924 (8th Cir. 2004); *Chambers*, 351 F.3d at 855-56; *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir. 1995).

When Ramlet was terminated, he was responsible for sales in seven states. Those seven states were permanently reassigned to one existing salesperson and one new salesperson, ages 37 and 41. *See Lewis*, 467 F.3d at 1136 ("the important datum here is the age of the person whom the [employer] chose as [the employee's] permanent replacement"). Ramlet argues that the alternate fourth element applies, even though this is not a RIF case, because his territory was reassigned to several people and therefore he was not replaced. However, unlike a RIF case, E.F. Johnson did not eliminate or redistribute all Ramlet's duties, but instead specifically hired someone to assume three of Ramlet's seven states. Therefore, the alternate fourth element does not apply.

Under the traditional fourth element, the ages of Ramlet's replacements are not sufficient to permit an inference of age discrimination. The new hire, Gruitch, was 41, clearly not sufficiently younger. Even if only the younger replacement is considered, this five-year difference is not sufficient. *See id.* ("a five-year age difference is insufficient to establish a *prima facie* case").

Because Ramlet failed to carry his burden by establishing a prima facie case of age discrimination, summary judgment in favor of E.F. Johnson is appropriate.

III.

The judgment of the district court is affirmed.

_____