# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3697

_____

Charles Riley,            *

                                   *

         Appellant,         *

                                   *    Appeal from the United States

      v.                           *    District Court for the

                                   *    Western District of Missouri.

Lance, Inc.,             *

                                   *

         Appellee.          *

_____

Submitted: October 19, 2007
Filed: March 20, 2008

_____

Before BYE, BOWMAN, and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Charles Riley appeals from the order of the District Court[1] granting summary judgment to Lance, Inc., on Riley's claim of age discrimination. We affirm.

We review the decision to grant summary judgment de novo, applying the same standard as the District Court. We view the facts in the light most favorable to Riley, and we will affirm if we conclude there remain no genuine issues of material fact and Lance is entitled to judgment as a matter of law. See Arnold v. Nursing & Rehab. Ctr.

_____

[1]The Honorable Dean Whipple, then Chief Judge, United States District Court for the Western District of Missouri.

at Good Shepard, LLC, 471 F.3d 843, 845 (8th Cir. 2006). The record shows the following undisputed facts.

Lance, headquartered in Charlotte, North Carolina, produces and distributes snack foods. Lance hired Riley in 1974 as a salesperson, and he worked for the company as an at-will employee until he was terminated in 2004. At the time of his termination, his position was district account manager (DAM) for the Kansas City district. The district sales manager (DSM) was Riley's supervisor. That position was held by Chuck Windham until August 2003, when Windham was terminated.

In November 2003, Lawrence Dumas replaced Windham as Riley's supervisor. A short time later, on December 4, Dumas sent Riley a memorandum that noted a 19.9% decrease in third-quarter sales for the accounts for which Riley was responsible, notwithstanding Riley's projection, made at the end of 2002, of a sales increase of 10.9% for 2003. In his memorandum, Dumas iterated the importance of setting and attaining goals to improve sales numbers and listed eight such goals for Riley, most with January 2004 due dates. Dumas wrote, "The goal here is to keep increasing your activity until we are up to standard performance. . . . Please be assured that we will have success, and there can be no thought of failure." Memorandum from Lawrence Dumas to Charles Riley 2 (Dec. 4, 2003). On December 8, Dumas e-mailed Riley a "forced ranking" of sales districts that showed Riley's year-to-date sales (through the end of November) as third from last (out of eighteen) with negative 7.4% growth. Riley's performance by year-end was improved, but his annual sales were still not up to his projections for 2003 and were down from 2002.

On January 15, 2004, Dumas met with Riley to discuss a memorandum from Dumas to Riley that set forth a performance development program (PDP). The memorandum noted that Riley's performance was lacking and that he would be required to meet certain targets with 100% compliance within sixty days or face termination. According to the terms of the PDP, the goals were not beyond ordinary

day-to-day requirements of the DAM position, but Riley had failed to date to achieve them. On March 11, 2004, Dumas met with Riley and presented him with a termination letter that noted Riley had not made acceptable progress toward meeting the objectives set out in the PDP. Riley's employment was terminated effective immediately. He was fifty-eight years old and had nearly thirty years as a Lance employee.

Riley filed age-discrimination charges with the United States Equal Employment Opportunity Commission (EEOC) and the Missouri Commission on Human Rights (MCHR). After Riley received right-to-sue letters from the EEOC and the MCHR, he filed suit against Lance in state court in May 2005 alleging violations of the Missouri Human Rights Act (MHRA), including a claim of age discrimination, and making a claim under the common-law doctrine of promissory estoppel. The case was removed to federal court based on diversity jurisdiction, and on September 21, 2006, the District Court granted summary judgment to Lance on the claim of age discrimination.[2] Riley appeals.

Riley does not contend, and the record does not show, that he has any direct proof that Lance terminated him because of his age. Where, as in this case, any evidence of age discrimination is circumstantial, we must apply the McDonnell Douglas burden-shifting analysis.[3] Schierhoff v. Glaxosmithkline Consumer

---

[2]The District Court also granted summary judgment to Lance on Riley's claim for deliberate and willful conduct under the MHRA and his claim under the doctrine of promissory estoppel. Riley does not challenge those portions of the District Court's decision in this appeal.

[3]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The analysis of a state-law discrimination claim under the MHRA is the same as that for a federal claim under the Age Discrimination in Employment Act (ADEA), Schierhoff v. Glaxosmithkline Consumer Healthcare, L.P., 444 F.3d 961, 964 (8th Cir. 2006), so we cite federal discrimination case law as controlling authority.

Healthcare, L.P., 444 F.3d 961, 964 (8th Cir. 2006). In order to prevail, Riley must first be able to "establish a prima facie case of discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000). If he is able to do so, the burden would then shift to Lance to produce evidence that Riley was terminated "for a legitimate, nondiscriminatory reason." Id. (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981)). If Lance were able to come forward with such evidence, the presumption of discrimination raised by Riley's proof of a prima facie case would drop out of the case and Riley would need to show by a preponderance of the evidence that Lance's reasons for termination were a pretext for discrimination. Id. at 143. Since this case was decided on Lance's motion for summary judgment, Riley must show a genuine issue of material fact at any step of the analysis to be successful on appeal.

To make out a prima facie case and get past step one of the McDonnell Douglas analysis, Riley must be able to show the following: that he was a member of a protected class when he was terminated, that he was otherwise qualified for the position from which he was terminated when he was terminated, that Lance terminated him, and that his "discharge occurred in circumstances giving rise to an inference of unlawful discrimination." Arnold, 471 F.3d at 846.

In its decision on Lance's motion for summary judgment, the District Court collapsed the prima facie case into the McDonnell Douglas framework (as have many courts in the past—including this one). That is, at step two of the prima facie case analysis, the District Court required Riley to show a genuine issue of fact as to whether "he was performing his job at the level that met the employer's legitimate expectations." Order of Sept. 21, 2006, at 4 (citing Calder v. TCI Cablevision of Mo., Inc., 298 F.3d 723 (8th Cir. 2002)). This was error. See Arnold, 471 F.3d at 846. Riley needed only to show that he was "otherwise qualified" for the position he held. Reeves, 530 U.S. at 142. Since he had been performing the DAM job successfully for years, he met that requirement of the prima facie case. See McGinnis v. Union Pac.

R.R., 496 F.3d 868, 875–76 & n.3. Riley also met his burden in proving parts one and three of the prima facie case—Lance terminated him and he was over forty years old at the time. As to part four of the prima facie case, Lance does not dispute Riley's contention that he was replaced with a substantially younger person. That fact alone gives rise to the necessary inference of age discrimination. See Ward v. Int'l Paper Co., 509 F.3d 457, 461 (8th Cir. 2007). Riley therefore demonstrated a prima facie case that Lance terminated him because of his age, and the District Court should have proceeded to the next step of the McDonnell Douglas analysis.

Our de novo review of the record in this case, however, leads us to conclude that the District Court's error is not reversible. See Bass v. SBC Commc'ns, Inc., 418 F.3d 870, 872 (8th Cir. 2005) (noting that we may affirm summary judgment "on any grounds supported by the record"). As we intimated above, the District Court's analysis of job qualification in its discussion of the prima facie case was a de facto analysis of the second and third parts of the McDonnell Douglas framework. In other words, the District Court effectively completed the burden-shifting analysis. The court held that Riley's performance had not met Lance's legitimate expectations and that Riley presented no evidence to create a genuine issue that it had. In other words, Riley was unable to come forward with evidence to show that Lance's reason for terminating him—that his performance did not meet Lance's expectations—was a pretext for illegal discrimination.

As we understand Riley's argument on appeal, he believes the need for the PDP was "contrived," and in any event, he met the "legitimate" PDP targets. Br. of Appellant at 36.[4] He contends that he has shown genuine issues as to whether Lance

---

[4]Riley has not made it easy for us to review the parts of the record that he contends support his arguments. The first twenty-two pages of the Joint Appendix he filed with this Court are not sequentially paginated, and almost none of his citations to that appendix provide support for what he says in the corresponding text of his brief. Some of his citations are to page numbers beyond the last numbered page in the

lied about the need for the PDP and terminated him for failure to meet PDP targets that were not legitimate. Riley argues that the District Court did not fulfill its obligation under the summary judgment standard to view the evidence in the light most favorable to him and to give him the benefit of all reasonable inferences to be drawn from the evidence. Indeed, Riley should receive the benefit of all reasonable inferences that can be drawn from the evidence, but only if those inferences can be drawn "without resort to speculation." Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810 (8th Cir. 2005). Upon de novo review, applying the same standard as the District Court, we conclude that summary judgment was proper in this case.

Riley argues that Lance's assertions of poor sales performance were false and that the need for a PDP in the first place therefore was fabricated. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves, 530 U.S. at 147. As evidence of Lance's "dissembling," Riley points to the fact that Lance continues, even on appeal, to focus on his performance as reflected by the eleven-month forced ranking, even though his sales improved in the final month of 2003 such that his annual sales were down only 1.7%. The record does show an improvement, but his sales volume was still below not only his volume for 2002 but also his own projections for 2003. "[S]ales volume is the principal indicator of whether a salesperson has met the employer's legitimate expectations." Calder, 298 F.3d at 729. Riley's sales performance was a legitimate reason to put him on a PDP.

Riley points out that he received fourth-quarter sales bonuses and suggests that he would not have received such rewards had he been underperforming. But he

single-volume appendix that he filed. We have no idea what appendix he has actually cited, but it is not the Joint Appendix he filed with this Court. Indeed, it appears that many of the documents to which Riley intended to cite are not included anywhere in the Joint Appendix that we have. See Brief of Appellant at 17–18 and citations to Joint Appendix therein for numerous examples.

testified in his deposition that both the district sales bonuses and the regional bonuses were based on the overall performance of the entire district and region, respectively, not on his individual performance. In these circumstances, the bonuses do not show a genuine issue as to whether Riley's performance was meeting Lance's expectations. Likewise, Riley's reliance on previous positive performance evaluations in support of his argument is misplaced. Past performance evaluations—especially where, as here, they were given by different supervisors—cannot be used to show that Riley was meeting Lance's expectations a year or more later when Riley was terminated. See id.; Fisher v. Pharmacia & Upjohn, 225 F.3d 915, 920 (8th Cir. 2000).

We conclude that Riley has not shown a genuine issue as to whether the PDP was "contrived" by management. That is, when the PDP was implemented, Riley was not meeting Lance's legitimate expectations, and no reasonable jury could find otherwise. See Bass, 418 F.3d at 873. We move on to consider Riley's argument that he has demonstrated a genuine issue as to whether he met the requirements of the PDP—at least the "legitimate" requirements therein. Riley claims that he showed a genuine issue as to whether terminating him for his failure to meet the targets demonstrates pretext for age discrimination.

There were four categories of requirements set out in the PDP, and Lance argues that Riley fell short on all of them. First, Lance asserts that Riley did not meet the "work-with" requirements of the PDP. Three times a week, Riley, as DAM, was to take a branch manager with him on sales calls "so that the branch manager has the opportunity to see how sales presentations should be done" and so that the DAM can check to be sure "that particular stores are in compliance with any existing sales agreements or promotions." Br. of Appellee at 3–4. In his deposition, Riley admitted that he failed to meet this requirement for at least one week during the time the PDP was in place but blames Dumas for giving another assignment to the branch manager with whom Riley had planned to work that week. Riley's attempt to justify his failure does not create a genuine issue as to the legitimacy of the requirement. Presumably

there were other branch managers with whom Riley might have worked, and Dumas's uncontroverted deposition testimony was that he did not restrict Riley's discretion in deciding which managers to work with and what stores to visit. Riley's justification for his failure to meet this PDP requirement is not evidence that creates a genuine issue as to whether the requirement was legitimate in the first instance. See Grey v. City of Oak Grove, Mo., 396 F.3d 1031, 1035 (8th Cir. 2005).

The second and third targets of the PDP required Riley to increase the distribution of certain product lines at five specified accounts and to increase overall sales to those same accounts. Lance contends that Riley fell short on at least one of these accounts. Riley argues that these were not legitimate targets because the account in question, Falley's Food 4 Less, was not an active account. He pointed this out to Dumas at the meeting where they reviewed the PDP, but Dumas told him that Falley's was within Riley's district and that the noted sales increases would be required to satisfy the terms of the PDP. Nevertheless, Riley did not call on Falley's during the pendency of the PDP to attempt to make *any* sales to the store, even if Lance was not selling to the account as of the date of the PDP. He attempts to justify his failure simply by claiming that he told Dumas the account was not active and that Lance has not been successful in selling to Falley's since Riley's termination. Again, that is not evidence that creates a genuine issue of fact as to the legitimacy of the requirement to sell product to Falley's.

Finally, the PDP required that Riley ensure that all of his stores were in compliance with corporate marketing agreements (CMAs) previously entered into. Basically, CMAs awarded product discounts to corporate customers if all of their stores satisfied certain in-store marketing requirements. Dumas testified that early in 2004, he personally visited several stores that were Riley's responsibility and observed that those stores were not in compliance with their corporate parents' CMAs. Riley does not address this testimony and has pointed to nothing in the record that might raise a genuine issue on this fact.

The record shows more than one unmet PDP requirement for which Riley can show no genuine issue as to legitimacy. In these circumstances, we must conclude that summary judgment for Lance was proper. Lance's expectations for Riley's performance, as reflected in the PDP, were legitimate, and Riley failed to meet those PDP targets by the deadline given. Riley cannot show otherwise, that is, he cannot show that the reason Lance gave for his termination—his failure to meet the terms of his PDP—was pretextual.

The judgment of the District Court is affirmed.

_____