# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1392

_____

William Lake,                             *
                                          *
            Appellant,                    *
                                          *   Appeal from the United States
      v.                                  *   District Court for the
                                          *   District of Minnesota.
Yellow Transportation, Inc.,              *
                                          *
            Appellee.                     *

_____

Submitted: November 17, 2009
Filed: March 2, 2010

_____

Before MURPHY, SMITH, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

William Edward Lake sued his former employer, Yellow Transportation, Inc., for race discrimination. The district court granted summary judgment to Yellow. Lake appeals under 28 U.S.C. § 1291. This court reverses and remands.

I.

Lake, an African-American, began working for Yellow in Burnsville, Minnesota, in 2004. Yellow has three categories of workers: casual, probationary, and regular. Only regular employees are subject to a collective bargaining agreement.

Yellow employs casual workers as-needed, typically calling them two hours before an open shift. Casual workers must accept at least five shifts each week, but do not have to accept work when called.

Before becoming a regular employee, a casual worker must spend 30 days as a probationary employee. A probationary employee who passes the 30-day period becomes a regular employee subject to the collective bargaining agreement. An employee who fails probation may not return to casual status. According to the record, Yellow does not have a written policy or written criteria for determining the satisfactory completion of probation.

Lake, like all new employees, began as a casual worker. Yellow stressed "attendance, availability, and performance" as the factors for promotion from casual status. Lake was often unavailable as a casual worker, as he worked another part-time job, but received positive reviews when he worked.

In May, July, and September, 2005, Lake approached Gary Kraus, the general operations manager of the Burnsville facility, and requested probationary status. He assured Kraus he would give up his other, part-time job if he could become a regular for Yellow. For months, Kraus refused due to Lake's availability and attendance record. But in October, Kraus made Lake a probationary employee.

According to Yellow, Lake was unavailable when called two days, tardy five days, and failed to punch in his time card two days in November. Lake disputes all but two of these instances, conceding tardiness on November 11 and November 18.[1] According to Yellow, Lake's frequent tardiness caused Kraus to warn him that he would be fired if he were tardy again, and Lake was tardy again on November 22.

---

[1] Yellow claims Lake was also tardy on November 4, 5, and 22, as reflected by his time cards. Lake disputes these, emphasizing that Yellow's absentee logs and attendance tracking reports do not show him as tardy on these dates.

Lake denies the warning and final tardy. Yellow fired Lake on November 23, during the 30-day probation period.

Lake sued Yellow, claiming race discrimination in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Yellow responded that it fired Lake due to his unavailability and tardiness. The district court granted summary judgment to Yellow.

## II.

This court reviews a grant of summary judgment *de novo*, viewing the record most favorably to the non-moving party. *See Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007), *citing Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1135 (8th Cir. 2006). Summary judgment is proper if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Fed. R. Civ. P. 56(c)**.

A plaintiff alleging race discrimination may survive summary judgment either by direct evidence, or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). Here, Lake presents no direct evidence, so the *McDonnell Douglas* framework applies.[2]

Under *McDonnell Douglas*, the plaintiff initially has the burden to establish a prima facie case of discrimination. *Id.* at 802. A prima facie case creates a rebuttable presumption of discrimination. *See Kohrt v. MidAmerican Energy Co.*, 364 F.3d 894, 897 (8th Cir. 2004). The burden then shifts to the defendant to provide a

---

[2] Title VII and Section 1981 claims are analyzed under the same framework. *See Gordon v. Shafer Contracting Co.* 469 F.3d 1191, 1196 (8th Cir. 2006).

legitimate, nondiscriminatory reason for its decision. *See McDonnell Douglas Corp.*, 411 U.S. at 802. "If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext" for discrimination. *Ramlet*, 507 F.3d at 1153.

## A.

To establish a prima facie case, Lake must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination (for example, similarly situated employees outside the protected class were treated differently). *See, e.g., Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009); *Wheeler v. Aventis Pharms.*, 360 F.3d 853, 857 (8th Cir. 2004). The parties dispute the second and fourth elements.

## 1.

With respect to the second element, Lake argues the district court erroneously required him to show he met Yellow's "legitimate expectations," while *McDonnell Douglas* requires him to show that he was "qualified for the position." "[E]ven assuming that there is a distinction with a difference between the two articulations, and the 'qualified for the job' articulation at the second step is indeed a less onerous standard . . . we must see the forest through the trees." *Riser v. Target Corp.*, 458 F.3d 817, 820 (8th Cir. 2006). *See, e.g., Wimbley*, 588 F.3d at 962, *Wheeler*, 360 F.3d at 857, *Gilmore v. AT&T*, 319 F.3d 1042, 1046 (8th Cir. 2003), *Ghane v. West*, 148 F.3d 979, 982 n.3 (8th Cir. 1998).

But under either formulation, Lake is not required to disprove Yellow's reason for firing him at this stage of the analysis. *See Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008); *Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 944

-4-

(8th Cir. 1994). If he were, the *McDonnell Douglas* burden-shifting analysis would collapse into the second element of the prima facie case. *See **Davenport***, 30 F.3d at 944 ("[B]y requiring plaintiff to disprove the alleged conduct violations in order to establish his prima facie case, the district court essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse employment action -- in other words, to prove pretext and the ultimate issue of intentional discrimination."). "The prima facie burden is not so onerous." ***Id.***, *quoting **Johnson v. Arkansas State Police***, 10 F.3d 547, 551 (8th Cir. 1993). Lake establishes his prima facie case if, setting aside Yellow's reason for firing him, he was *otherwise* meeting expectations or *otherwise* qualified. *See **Riley***, 518 F.3d at 1000 (using "otherwise qualified" language).

The district court appears to have erred by considering Lake's tardiness at this stage of the analysis. The record does not indicate that Lake failed to meet expectations other than the tardiness and unavailability Yellow offers as its reasons for firing him.

2.

With respect to the fourth element, Lake argues that his evidence creates a genuine issue of material fact. Evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis, can satisfy the inference-of-discrimination element of the prima facie case. *See **Putman v. Unity Health Sys.***, 348 F.3d 732, 736 (8th Cir. 2003).

A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision. *See **Arnold v. Nursing & Rehab. Ctr. at Good Shepherd, LLC***, 471 F.3d 843, 847 (8th Cir. 2006). *See also **Ledbetter v. Alltel Corporate Servs., Inc.***, 437 F.3d 717, 722 (8th

Cir. 2006) (employer failed to follow its own policies); *Wimbley*, 588 F.3d at 962-63 (employer treated similarly-situated employees in a disparate manner); *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703-04 (8th Cir. 1994) (employer shifted its explanation of the employment decision).

Lake contends that Yellow applied its own policy unequally by firing him while not firing white probationary employees with records of unavailability. *See Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 909 (8th Cir. 1999) (discriminatory enforcement of disciplinary policy may create a factual dispute as to pretext). According to the record, Yellow does not have a written policy or written criteria for whether employees pass probation. In his deposition, Kraus, the general operations manager speaking for Yellow, describes the policy:

> [Probationary employees'] performance at work, their ability to come to work, their conduct at work, were all things that would be closely evaluated during that 30 day period. Attendance was a part of that.

In his affidavit, Kraus states that he "explained that if Lake became a probationary employee, his attendance would be closely monitored and that *unacceptable tardiness or failure to be available for a shift* would result in permanent termination." (Emphasis added). Kraus further explained that Lake's "availability would be closely monitored," and told Lake "that it would not be in his best interest to move to probationary status if he was not in a position to be available for all shifts due to other obligations, such as a second job." In its motion for summary judgment, Yellow stated that Lake was discharged "for repeatedly poor attendance and availability during probationary employment."

Lake stresses that Yellow hired several white employees who were unavailable for at least one call during their probation periods. Lake provides evidence that two of them missed entire days of work because they were unavailable when called. Lake

concedes only two tardies, and maintains he was never unavailable – never missing a day of work – during his probation period.

Yellow repeatedly cites Lake's unavailability while he was a casual worker. But, viewing the facts most favorably to Lake, Yellow waived these availability concerns by promoting him to probationary status (as passing probation is based on performance during probation). Kraus states in his deposition: "The determination to remove Mr. Lake was based primarily on his occurrences that fell within his probationary period . . . ." Further, Yellow stated in moving for summary judgment that it fired Lake because of his attendance and availability "during probationary employment," not while he was a casual worker.

Yellow contends that Lake's unavailability during probation is immaterial, insisting it fired Lake primarily for tardiness and no other probationary employees were tardy. *See Clearwater v. Indep. Sch. Dist. No. 166*, 231 F.3d 1122, 1127 (8th Cir. 2000) (holding that tardiness is a legitimate reason for discharge). But drawing the inferences in favor of Lake, Kraus's statements of expectations for probationary employees do not distinguish tardiness and unavailability. Lake was fired under Yellow's policy, and white employees were not. *See Ramlet*, 507 F.3d at 1152 (this court reviews a grant of summary judgment *de novo*, viewing the record most favorably to the non-moving party). Yellow asserts that "if Lake were not tardy during his probationary period, his failure to accept calls to work would not have risen to a level warranting termination." But this assertion contradicts Kraus's statements of Yellow's policy for probationary employees.

Further, in order even to claim that Lake was unavailable, Yellow violated its own policies (viewing the facts favorably to Lake). *See Dixon v. Pulaski County Special Sch. Dist.*, 578 F.3d 862, 871 (8th Cir. 2009), *citing Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1024 (8th Cir. 1998) ("[T]he fact that [an employer] may have deviated from its [employee absenteeism] policies, when coupled

with the fact that the company mischaracterized [the plaintiff-employee's attendance record] in a manner giving rise to negative connotations, lends support to an inference of improper motive."). Yellow claims that Lake missed three calls before accepting work on November 11, but this contradicts Yellow's policy that probationary employees receive only one call a day for work. Yellow claims that Lake was unavailable for work on November 13, but this is disputed as Lake claims – citing Yellow's records – he had already worked 40 hours that week, and Yellow's policy is that probationary employees who already worked 40 hours are not required to take calls.

## B.

These disputes over Yellow's application of its policies also preclude summary judgment at step three of the *McDonnell Douglas* analysis. Because there are material factual disputes over Lake's attendance and availability record and whether Yellow applied its policies equally, summary judgment is inappropriate.

## III.

The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

_____