# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2827
_____

Heidi Nelson, formerly known as Heidi Martin

*Plaintiff - Appellant*

v.

Lake Elmo Bank; Olivia Alvarado, Individually and as an employee

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: May 9, 2023
Filed: August 1, 2023
_____

Before COLLOTON, WOLLMAN, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

Lake Elmo Bank fired Heidi S. Nelson after receiving a report that she sexually harassed another employee. Nelson sued the Bank, claiming her termination was based on sex in violation of the Minnesota Human Rights Act, Minn. Stat. §§ 363A.08, subd. 2(2) and (3). She also sued the Bank and the reporting

employee for defamation.  On both claims, the district court[1] granted summary judgment to the defendants.  Nelson appeals.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Heidi S. Nelson worked as the Assistant Vice President of Teller Services at the Bank.  She supervised Olivia Alvarado, a bank teller.  In September 2018, according to Alvarado, Nelson made sexual advances toward her at a local bar.  Alvarado reported that Nelson grabbed her breasts; told her "I'd like to take you in the bathroom and f**k you"; and tried to stick her tongue in her mouth and her boyfriend's mouth.  Alvarado later discussed the incident with her mother, stepfather, and boyfriend.

By the Bank's harassment policy, employees were to promptly report any unlawful sexual harassment to their Group Leader or Supervisor, but "if your Group Leader or Supervisor is participating in the suspected behavior, then you should report it to one of the following individuals . . . Director of Human Resources . . . Human Resources Manager . . . President/CEO."  The Bank reserved the right "to determine whether particular conduct violates any part of this policy . . . . If investigation . . . produces evidence of inappropriate behavior, appropriate disciplinary action will be taken, up to and including, unpaid suspension and/or immediate termination of employment."

Alvarado reported the incident to Nelson's supervisor.  Both immediately met with the Human Resources Manager.  The same day, the HR Manager interviewed Alvarado and removed her from Nelson's team and into a new position.  The next day, the Director of HR and the HR Manager interviewed Nelson.  According to them, Nelson said that her behavior at the bar was just "friendly banter" and there

---

[1]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

"was a history of things like this between her and Olivia and other friends at the Bank." Six days later, the Bank fired Nelson, concluding her conduct violated its harassment policy. Nelson sued the Bank for discrimination under the MHRA and asserted a defamation claim against the Bank and Alvarado. The district court granted summary judgment to the defendants, dismissing both claims. Nelson appeals.

This court reviews de novo the grant of summary judgment and the district court's conclusions of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." **Fed. R. Civ. P. 56(a)**. To create a genuine dispute of fact, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). On summary judgment, this court views all evidence and reasonable inferences most favorably to the non-moving party. *Meier v. St. Louis*, 934 F.3d 824, 827 (8th Cir. 2019).

II.

Nelson claims the Bank discriminated against her based on sex during her termination, violating the MHRA.

"Claims under the MHRA, not involving direct evidence of discriminatory animus, are subject to the three-part burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973)." *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012). "Under this framework, a plaintiff must first make out a prima facie case of discrimination." *Id.* To establish a prima facie case, Nelson must show that: (1) she is a member of a protected class; (2) she was qualified for her position; (3) she was discharged; and (4) the circumstances give rise to an inference of discrimination. *See id.*; *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). If established, "the burden

-3-

then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision." *Lake*, 596 F.3d at 873. If the defendant provides a non-discriminatory reason, the burden shifts back to the plaintiff to show the employer's proffered explanation was a pretext for discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

Because Nelson has not introduced direct evidence of discrimination, her claim is analyzed under the *McDonnell Douglas* burden-shifting framework. The parties do not dispute that the first three elements of a prima facie discrimination case are met here. Nelson claims the evidence of pretext satisfies the fourth element of a prima case, and also discredits the Bank's proffered explanation for her termination. *See Lake*, 596 F.3d at 874 ("Evidence of pretext, normally considered at step three of the *McDonnell Douglas* analysis, can satisfy the inference-of-discrimination element of the prima facie case.").

According to the Bank, Nelson was terminated because the report and the investigation provided a reasonable belief that she violated the company's harassment policy. The Bank has satisfied its burden to provide a legitimate, nondiscriminatory reason for Nelson's termination. *See Johnson v. AT&T Corp.*, 422 F.3d 756, 762 (8th Cir. 2005) (acknowledging that the employee "does not dispute the fact that an employee's violation of company policy is a legitimate reason for subsequent termination."); *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 694 (8th Cir. 2021) ("The Plaintiffs do not dispute that CRST offered legitimate non-discriminatory reasons—protecting the complainant's safety and responding properly to complaints of sexual harassment as required by our hostile work environment precedent—for the removal policy."). *See generally Torgerson*, 643 F.3d at 1047 ("The burden to articulate a nondiscriminatory justification is not onerous, and the explanation need not be demonstrated by a preponderance of the evidence."), *quoting Floyd v. State of Mo. Dep't of Soc. Servs., Div. of Family Servs.*, 188 F.3d 932, 936 (8th Cir. 1999).

To prevail, Nelson must establish a prima facie case and show that the Bank's proffered explanation is a pretext for discrimination. "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake*, 596 F.3d at 874. "We have recognized that the showing of pretext necessary to survive summary judgment requires more than merely discrediting an employer's asserted reasoning for terminating an employee." *Johnson*, 422 F.3d at 763. Nelson must "show that the circumstances permit a reasonable inference to be drawn that the real reason [the Bank] terminated [her] was because of [her sex]." *Id.*

Nelson argues that her evidence establishes pretext by showing that the Bank: (1) conducted a faulty investigation; (2) violated its own policies during her termination; (3) treated similarly situated male employees differently; (4) shifted its explanation for her termination; and (5) improperly relied on Alvarado's inconsistent statements.

## 1. The Investigation

Nelson claims the Bank conducted a "sham investigation" because it did not interview key witnesses and thus disregarded exonerating evidence. In a summary-judgment affidavit, Nelson's fiancé said that Nelson "did not grab Ms. Alvarado's breasts, tell her she wanted to take her into the bathroom and f**k her on the bathroom floor, . . . or attempt to French kiss either Ms. Alvarado or her boyfriend." To determine whether an employer's investigation shows pretext, "the proper inquiry *is not* whether [the employer] was factually correct in determining that [the employee did the acts] . . . . Rather, the proper inquiry is whether [the employer] honestly believed that [the employee did the acts.]" *Id.* at 762.

In its investigation, the Bank—claiming a need for confidentiality—did not interview Nelson's fiancé or Alvarado's boyfriend, both present at the bar during the incident. A failure to interview some witnesses does not automatically create

evidence of pretext. *See id.* (determining that the employer's failure to interview two of the employee's witnesses during the investigation did not show that the termination was pretext for racial discrimination).

The Bank did interview Alvarado and Nelson. During her interview, Nelson did not deny committing the acts, but instead explained her conduct as banter and like past encounters. During her deposition, Nelson denied committing the acts. Even so, the Bank had sufficient information to reasonably believe Nelson violated the company's harassment policy. *See id.* at 760, 763 (determining the employer had a reasonable basis to terminate the employee, despite the employee repeatedly denying committing the acts). Even if the Bank's belief about Nelson's conduct was mistaken, this does not automatically show Nelson's termination was motivated by sex discrimination. *See Twymon v. Wells Fargo & Co.*, 462 F.3d 925, 935 (8th Cir. 2006) ("A proffered legitimate, non-discriminatory reason for termination need not, in the end, be correct if the employer honestly believed the asserted grounds at the time of the termination."). *See, e.g.*, **Johnson**, 422 F.3d at 762-63 ("Thus even if AT&T had no solid proof that [the employee] made the bomb threats, and even if AT&T was mistaken in its belief that [the employee] had made the threats, any such mistake does not automatically prove that AT&T was instead motivated by unlawful discrimination.").

## 2. Internal Policies

Nelson claims the Bank's violation of its own policies during her termination shows pretext.

According to Nelson, the Bank's employees violated its policy by shredding handwritten notes from the interviews. The Bank's President said the company's policy was to retain notes from interviews, place them in the employee's file, and not shred them. However, he added that if the handwritten notes were transcribed into an electronic format, then he would expect the handwritten notes be shredded for confidentiality. The handwritten interview notes here were transcribed into an

electronic format before shredding. The Bank's employees did not violate the company's policy. *See **Bonomo v. Boeing Co.***, 63 F.4th 736, 743 (8th Cir. 2023). (granting the employer's motion for summary judgment on the age discrimination claim when "[o]n this record, no reasonable factfinder could conclude that Boeing violated its own policies . . . .").

### 3. Comparators

Nelson claims the Bank treated her differently than similarly situated male employees, showing pretext.

"While instances of disparate treatment can support a claim of pretext, [the plaintiffs] have the burden to prove that they . . . were 'similarly situated in all relevant respects'—a 'rigorous' standard at the pretext stage." ***Torgerson***, 643 F.3d at 1051, *quoting **King v. Hardesty***, 517 F.3d 1049, 1063 (8th Cir. 2008). "The 'similarly situated co-worker inquiry is a search for a substantially similar employee, not for a clone.'" ***Ridout v. JBS USA, LLC***, 716 F.3d 1079, 1085 (8th Cir. 2013), *quoting **Chaney v. Plainfield Healthcare Ctr.***, 612 F.3d 908, 916 (7th Cir. 2010). "Where the employer has terminated a plaintiff due to acts of the plaintiff, the plaintiff has the burden of showing that [she] and the more favorably treated employee's acts were of 'comparable seriousness.'" ***Ricks v. Riverwood Int'l Corp.***, 38 F.3d 1016, 1019 (8th Cir. 1994), *quoting **Hayes v. Invesco, Inc.***, 907 F.2d 853, 856 (8th Cir. 1990).

Nelson emphasizes the *Ridout* case. This court there denied summary judgment on the age discrimination claim, concluding that the terminated employee presented sufficient evidence of pretext because the company treated a similarly situated, younger employee differently. ***Id.*** at 1086. This court explained the younger employee was a proper comparator because "[the younger employee] was accused of the same infraction as Ridout (poor performance), by the same supervisor (Mulgrew), while in the same position (rendering superintendent), and he received only a demotion while Ridout lost his position with the company." ***Id.***

Nelson provides evidence of two male employees that she claims are proper comparators. According to her, the first employee had a romantic relationship with another employee; the second employee made repeated sexual comments to employees and violated the company's policies by arriving to work intoxicated. The Bank did not fire either of them. These male employees are not proper comparators. They engaged in different conduct, reported to a different supervisor, and had distinguishing circumstances, especially the lack of a formal report against them. *See **Clark v. Runyon***, 218 F.3d 915, 918 (8th Cir. 2000) ("Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.").

## 4. Shifting Explanations

Nelson claims that the Bank shifted its explanation for her termination, showing pretext. According to her, the Bank initially stated her termination was because of the alleged sexual harassment, but later mentioned her history of poor work performance.

"A change in an employer's legitimate, nondiscriminatory reason for firing an employee is probative of pretext only if the discrepancy is 'substantial.'" ***Bone v. G4S Youth Servs., LLC***, 686 F.3d 948, 957 (8th Cir. 2012), *quoting **Twiggs v. Selig***, 679 F.3d 990, 994 (8th Cir. 2012). In *Bone*, an employee became defiant with her supervisor, so the employer gave her the option to resign instead of being terminated. ***Id.*** at 952. The employee resigned and sued for race and age discrimination. ***Id.*** To show pretext, the employee argued that the employer shifted explanations for her termination by telling employees that she was terminated but telling the EEOC that she quit. ***Id.*** at 957. This shift in explanation was not substantial enough to show pretext because it amounted to "nothing more than a semantic dispute." ***Id.*** at 957-58.

The Bank consistently explained that Nelson was terminated for violating the harassment policy. When deposed, the HR Manager said that Alvarado's peer review of Nelson was "used for the investigation," but later said that Nelson was fired because of the alleged sexual harassment. The Director of HR and the Bank's President both testified that Nelson was fired because of the alleged sexual harassment. The Bank's President, a final decision-maker, further noted he had never seen Alvarado's peer review. While the peer review shows that Nelson may have had conflicts with some employees at the Bank, this does not establish that Nelson's termination was pretext for sex discrimination. *See Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 471 (8th Cir. 2011) ("While there certainly appears to be a personal conflict between [the employee and his supervisor] that led, in part, to [the employee's] termination, there is no suggestion of age discrimination to allow [the employee] to survive summary judgment.").

## 5. Inconsistent Statements

Nelson argues that Alvarado's inconsistent accounts of the incident discredits her claims, showing pretext.

"Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000). Nelson emphasizes that Alvarado told the HR Manager that Nelson tried to stick her tongue in her mouth and her boyfriend's mouth. At her deposition, Alvarado initially did not include this detail, explaining that she "completely forgot about that part" when questioned about it. Nelson also stresses that Alvarado admitted lying about seeing a psychologist after the incident.

The parties dispute what happened at the bar. Even assuming Alvarado was not credible about some details, the Bank had sufficient information to reasonably believe that Nelson violated the harassment policy. *See Bone*, 686 F.3d at 954-55 (concluding a dispute about whether the employee lied to supervisors was not a

genuine issue of fact that precluded summary judgment on the discrimination claim). The details at issue here are not significant enough to convince a jury that the Bank's explanation was an attempt to cover up a discriminatory motive for Nelson's termination.

6.

In sum, Nelson's evidence does not show the Bank's proffered explanation was pretext for sex discrimination. The district court properly granted the Bank's motion for summary judgment on the discrimination claim.

III.

Nelson alleges that the Bank's employees defamed her during the investigation, and Alvarado defamed her by telling her family and boyfriend that Nelson engaged in sexual conduct at the bar.

"To establish a defamation claim, a plaintiff must prove three elements: (1) the defamatory statement is 'communicated to someone other than the plaintiff,' (2) the statement is false, and (3) the statement 'tend[s] to harm the plaintiff's reputation and to lower [the plaintiff] in the estimation of the community.'" **Bahr v. Boise Cascade Corp.**, 766 N.W.2d 910, 919-20 (Minn. 2009), *quoting **Stuempges v. Parke, Davis & Co.**, 297 N.W.2d 252, 255 (Minn. 1980). "Statements that we have recognized as defamatory per se include 'false accusations of committing a crime and false statements about a person's business, trade, or professional conduct.'" **Maethner v. Someplace Safe, Inc.**, 929 N.W.2d 868, 875 (Minn. 2019), *quoting **Becker v. Alloy Hardfacing & Eng'g Co.**, 401 N.W.2d 655, 661 (Minn. 1987).

The district court properly concluded that the statements made by the Bank employees and Alvarado about Nelson's conduct were likely per se defamatory

because they ultimately caused Nelson's termination.[2] *See **Anderson v. Kammeier***, 262 N.W. 2d 366, 372 (Minn. 1977) ("Along with charges of a crime, imputations of a loathsome disease, and unchastity, imputations affecting a person's conduct of business, trade, or profession are actionable without proof of special damages.").

"Even though an untrue defamatory statement has been published, the originator of the statement will not be held liable if the statement is published under circumstances that make it conditionally privileged and if privilege is not abused." *Lewis v. Equitable Life Assur. Soc. of the U.S.*, 389 N.W.2d 876, 889 (Minn. 1986), *citing **Restatement (Second) of Torts*** § 593 (1977). "A qualified privilege is abused and therefore lost if the plaintiff demonstrates that the defendant acted with actual malice." *Id.* at 890. "Malice is defined as 'actual ill-will or a design causelessly and wantonly to injure plaintiff.'" ***Bol v. Cole***, 561 N.W.2d 143, 150 (Minn.1997), *quoting **McBride v. Sears, Roebuck & Co.***, 235 N.W.2d 371, 375 (Minn. 1975). "Malice cannot be implied from the statement itself or from the fact that the statement was false." *Id.*

## A.

The Bank claims it is not liable for defamatory statements made during the internal investigation because they are privileged.

"Minnesota law recognizes a qualified privilege protecting an employer against liability for a defamatory statement made about an employee." ***Palmisano v. Allina Health Sys., Inc.***, 190 F.3d 881, 885 (8th Cir. 1999). "Under Minnesota

---

[2]The Bank argues that the statements from the internal investigation do not qualify as defamation because they were never "published" to a third party. A statement is published if it is "communicated to someone other than the plaintiff." *Lewis v. Equitable Life Assur. Soc. of the U.S.*, 389 N.W.2d 876, 886 (Minn. 1986). The statements here were "published" because they were communicated to management level personnel at the Bank along with Alvarado's family and boyfriend.

law, an employer is entitled to qualified privilege if the communication was made on a proper occasion and for a proper purpose, and if the statements were based on reasonable and proper grounds." *Ewald v. Wal-Mart Stores, Inc.*, 139 F.3d 619, 623 (8th Cir. 1998).

The statements by Bank employees were made on a proper occasion: an internal investigation of the complaint. The statements were made for a proper purpose: to investigate the factual allegations in the report. *See McBride*, 235 N.W.2d at 374 ("Communications between an employer's agents made in the course of investigating or punishing employee misconduct are made upon a proper occasion and for a proper purpose, as the employer has an important interest in protecting itself and the public against dishonest or otherwise harmful employees.")

Nelson believes the Bank lost its privilege because the employees acted with actual malice. Alvarado reported Nelson's conduct in accordance with the Bank's harassment policy, and the Bank acted promptly to investigate the allegations. Nelson cites no evidence that the Bank's employees acted causelessly or wantonly to injure her during the investigation. *Cf. Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 380 (Minn. 1990) (holding that the employer was not entitled to qualified privilege when it took "no steps to investigate but relie[d] entirely on accusations either made by employees who may be biased or on second-hand hearsay with no identification of sources . . . .").

B.

Nelson claims that Alvarado defamed her by telling her mother, stepfather, and boyfriend about Nelson's conduct at the bar. She further asserts that any privilege was lost because Alvarado acted with actual malice.

"Historically, a qualified privilege has protected a publication when it was made by a person in the discharge of a public or private duty, legal or moral, or in the conduct of his own affairs and in matters where his interest is concerned."

-12-

*Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 328 (Minn. 2000). "Malice is generally a question of fact." *Bol*, 561 N.W.2d at 150. "On review of summary judgment, however, this court determines whether the evidence submitted raises any genuine issues of material fact." *Id.*

The Minnesota Supreme Court has held that a psychologist's statements to a minor patient's mother and her attorney about the child's reported abuse were privileged because the psychologist "had reasonable cause to believe that releasing the letters [to the mother] was necessary to protect [the minor], who was otherwise unable to protect himself." *Bol*, 561 N.W.2d at 150.

Alvarado discussed the bar incident with her parents and boyfriend to seek advice about whether to report Nelson's conduct at work. Alvarado had reason to believe that these communications, like those in *Bol*, were necessary to protect herself and her job.

Minnesota courts apply the Restatement (Second) of Torts when deciding defamation claims. *See, e.g.*, *Lewis*, 389 N.W.2d at 889 (citing §§ 581A, 593, and 619); *Moreno v. Crookston Times Printing Co.*, 610 N.W.2d 321, 328 (Minn. 2000) (citing §§ 593-598A on conditional privileges); *Stuempges*, 297 N.W.2d at 255 (reciting the elements of a defamation action, citing §§ 558-559); *Jadwin v. Minneapolis Star and Tribune Co.*, 367 N.W.2d 476, 491-92 (Minn. 1985) (citing § 580B as the standard to determine a defamation defendant's conduct and § 563 to decipher the meaning of an unprivileged statement); *LeBaron v. Minn. Bd. of Public Defense*, 499 N.W.2d 39, 42 (Minn. Ct. App. 1993) (citing §§ 583, 592A). Relevant here, the Restatement (Second) of Torts § 594 states:

> An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
> (a) there is information that affects a sufficiently important interest of the publisher, and
> (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest.

The circumstances here induce a reasonable belief that the incident with Nelson affected a sufficiently important interest to Alvarado—her job. *See Restatement (Second) of Torts* § 594(a). Alvarado reasonably believed that her family's knowledge of Nelson's conduct would help her decide whether to report the incident to her employer—helping to protect her job. *See id.* § 594(b). Applying § 594 here, Alvarado's statements to her family and boyfriend are conditionally privileged.

Nelson argues that the privilege was lost because Alvarado acted with actual malice. Nelson points to Alvarado's negative peer review about Nelson submitted two months before the incident. In the review, Alvarado stated that Nelson "has become lazy with scheduling, absent-minded in general, and it has been difficult to say that she's been the strongest asset to the Bank's team." Although the determination of malice is generally a question of fact for a jury, this court can determine a lack of malice exists based on the factual record. *See Palmisano*, 190 F.3d at 886 (affirming the grant of summary judgment, and dismissal of the defamation claim when, "after a thorough review of the record," there was no evidence of actual malice).

Even if Alvarado's statements to her family were motivated, in part, by a disdain for Nelson, the statements were also motivated by a proper purpose: Alvarado's need for guidance whether to report the incident to her employer. To constitute actual malice, Alvarado's statements must have been made "solely" from spite or ill will. *See Restatement (Second) of Torts* § 603 cmt. a ("Thus a publication of defamatory matter upon an occasion giving rise to privilege, if made *solely* from spite or ill will, is an abuse and not a use of the privilege.") (emphasis added). Even if Alvarado's discussion with her family may have been motivated, in part, by an improper motive, she did not lose the privilege. *See id.* ("However, if the publication is made for the purpose of protecting the interest in question, the fact that the publication is inspired in part by resentment or indignation at the supposed misconduct of the person defamed does not constitute an abuse of the privilege.").

-14-

Nelson stresses *Bahr v. Boise Cascade Corporation*, 766 N.W.2d 910 (Minn. 2009). The Minnesota Supreme Court there denied a motion for judgment as a matter of law, concluding the evidence was sufficient for "a reasonable jury to find that [the employee] published the defamatory statements from ill will and in an effort to cause employment problems for Bahr, and that [the employee] therefore acted with actual malice." *Bahr*, 766 N.W.2d at 922. The evidence there showed that the employee expanded the scope of her complaint by including conduct unrelated to the alleged harassment, and she said her motive for making the complaint was because Bahr "need[ed] a wake up call." *Id.* at 921. There was also evidence that the complaining employee acted in bad faith by knowingly making a false statement in her complaint. *Id.* at 922.

Here, unlike the employee in *Bahr*, Alvarado's complaint focused on only the conduct related to the harassment. There is also no evidence that Alvarado, unlike the employee in *Bahr*, made any knowingly false statements or expressed an improper motive for making the complaint. In her interview, Alvarado said that as a remedy, she sought to be moved off the teller line, away from Nelson, or switched to a different location. There is no evidence to show that Alvarado made her statements causelessly and wantonly to injure Nelson's employment. *See Stuempges*, 297 N.W.2d at 257 ("It is well-settled in Minnesota that to demonstrate malice in a defamation action the plaintiff must prove that the defendant 'made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff.'"), *citing McKenzie v. William J. Burns Int'l Detective Agency, Inc.*, 183 N.W. 516, 517 (Minn. 1921).

The district court properly granted the Bank and Alvarado's motion for summary judgment on the defamation claim.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

-15-