# United States Court of Appeals
## For the First Circuit

No. 18-1415

CARMEN RODRÍGUEZ-CARDI,

Plaintiff, Appellant,

v.

MMM HOLDINGS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Pedro A. Delgado-Hernández, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Barron, Circuit Judges.

Juan R. Dávila-Díaz, with whom Enrique J. Mendoza-Méndez and
Mendoza Law Offices were on brief, for appellant.
Katherine González-Valentín, with whom Patricia M. Marvez-
Valiente and Ferraiuoli LLC were on brief, for appellee.

August 26, 2019

**TORRUELLA**, **Circuit Judge**.    Carmen Rodríguez-Cardi ("Rodríguez-Cardi") appeals the district court's order granting MMM Holdings, Inc.'s ("MMM") motion for summary judgment on her Age Discrimination in Employment Act ("ADEA") claim regarding the termination of her employment.    The district court determined that the record was devoid of any evidence from which a reasonable jury could infer that MMM's articulated reason for terminating Rodríguez-Cardi's employment was pretextual, let alone a pretext for age discrimination.    After careful consideration, we affirm.

## I.    Background

### A.    Factual Background

On October 16, 2012, Rodríguez-Cardi began working with TEAMS LLC as an Independent Promoter for MMM, which "operates a [highly regulated] health insurance plan designed [for] beneficiaries of Medicare Advantage."    During her tenure as an Independent Promoter, Rodríguez-Cardi regularly performed several tasks for MMM, including generating "valid leads . . . through authorized marketing activities," while adhering to Centers for Medicare & Medicaid Services ("CMS") and MMM policies, procedures, and rules.    MMM Supervisor Roberto Rodríguez-Delgado ("Rodríguez-Delgado"), who oversaw Rodríguez-Cardi's work during this period, and MMM Sales Manager Brenda Real ("Real") eventually approached Rodríguez-Cardi and encouraged her to apply for a sales position

-2-

at MMM.  After interviewing with Rodríguez-Delgado and Real, on June 24, 2013, Rodríguez-Cardi accepted an offer to work as an Outside Sales Representative ("OSR") at MMM.  Under the terms of her employment, Rodríguez-Cardi -- who was forty-six years old at the time -- would report directly to Rodríguez-Delgado.

To sell MMM products, all OSRs must have a license issued by the Puerto Rico Insurance Commissioner.  Rodríguez-Delgado assisted Rodríguez-Cardi -- who was unlicensed and said she did not have enough money to pay the licensing fees -- with securing her license by lending her the necessary funds.

At the outset of her employment, Rodríguez-Cardi acknowledged receipt of MMM's Job Description for the OSR position, the "Sales Representative or Independent Producers Agreement Letter," and the MMM Employee Handbook.[1]  She certified her understanding that any "coordinated marketing" must be compliant with all applicable state and federal laws and CMS policies.  She additionally acknowledged that she was expressly prohibited from "solicit[ing] door-to-door for Medicare beneficiaries or through other unsolicited means of direct contact, including calling a

---

[1]  As an Independent Promoter, Rodríguez-Cardi had already been exposed to the rigor of these policies and procedures through firsthand experience and various trainings, including guidance on CMS and Medicare Improvements for Patients & Providers Act ("MIPPA") regulations.

beneficiary without the beneficiary initiating the contact." Moreover, MMM's written Employee Counseling/Progressive Discipline Policy provided that employees who "failed to meet MMM's . . . job expectations or violated MMM's policies and/or CMS provisions" could face either progressive discipline or immediate termination depending on the circumstances.

Rodríguez-Cardi's OSR duties included "conducting seminars and in-home sales presentations to eligible and potential Medicare beneficiaries"; providing product information to interested persons who had provided MMM with a valid written authorization; visiting assigned providers to "generate sales leads through referrals and to coordinate activities"; and creating various reports (e.g., in-home reports, leads results reports, and provider visit reports) which were due to Rodríguez-Delgado each day at 7:30 a.m.

OSRs were required to meet with their supervisor each month to discuss their job progress and performance, including review of their Primary Responsibilities Form ("Hoja de Responsabilidades Primarias," hereinafter "HRP"), which memorializes the OSR's success in reaching their monthly quotas and timeliness in submitting reports.

Rodríguez-Delgado assessed Rodríguez-Cardi's job performance in a probationary period evaluation dated

September 23, 2013. The evaluation, which Rodríguez-Cardi received and signed, concluded that she "presented doubts regarding MIPPA regulation[s] and [that] her sales reports [contained] many errors." Despite the concerns expressed in the evaluation, however, Rodríguez-Cardi was given a regular employee position as an OSR. Between August 2013 and February 2014, Rodríguez-Cardi's monthly evaluations reflected her pervasive failure to meet job expectations; her HRPs indicated that she was noncompliant with between forty and sixty-seven percent of the performance indicators each month. These unfulfilled performance indicators included meeting sales, "Scope of Appointments,"[2] and provider visit quotas, as well as "daily arrival at the office."

On February 21, 2014, Rodríguez-Delgado issued a "Record of Disciplinary Action" to Rodríguez-Cardi for her repeated failure to timely submit her sales reports between December 2013 and February 2014. When discussing the Record of Disciplinary Action with Rodríguez-Cardi, Rodríguez-Delgado informed her that "her actions were affecting the daily process of the Sales Department, generation of reports, quality calls, and audits," and that continued underperformance would be met with "more severe

---

[2] A Scope of Appointment is "a form that authorizes an MMM representative to approach potential affiliates or beneficiaries prior to giving an orientation and close sales."

disciplinary measures resulting in [termination]."  Rodríguez-Cardi did not write any comments or objections on the Record of Disciplinary Action despite having been given the opportunity to do so.

After failing again to meet her monthly sales quotas in October 2013 and February 2014, Rodríguez-Cardi was placed on an Action Plan "to help her with her productivity and sales."[3]  On March 17, 2014, Rodríguez-Delgado met with Rodríguez-Cardi and informed her that she was not meeting the Action Plan's objectives and that continued failure to comply would result in further adverse disciplinary action, including termination.  Rodríguez-Cardi received and signed the "Action Plan Follow-Up."  On April 2, 2014, Rodríguez-Delgado met with Rodríguez-Cardi once again, this time to discuss the "Action Plan Closing Memo," which detailed her noncompliance with the Plan's objectives.  The following day, Rodríguez-Delgado issued Rodríguez-Cardi a "Final Written Warning," which included a "Final Action Plan" -- a last-ditch attempt to improve her sales numbers and overall productivity.

---

[3]  Rodríguez-Cardi admitted that other sales representatives who failed to meet their sales quotas were "placed under the same action plan given to her."

The MMM Scope of Appointment Policy MKT-0047 provides that OSRs are strictly prohibited from any unsolicited contact with potential enrollees. An OSR must have a "Scope of Appointment" -- a specific written authorization -- issued by the Medicare beneficiary or legal representative before the OSR can engage in a sales presentation appointment. Pursuant to the Sales Investigation Process Policy CMP-0046, the recommended disciplinary action for unapproved door-to-door solicitation is "immediate suspension or termination." Additionally, the MMM Standards of Conduct for Sales and Marketing Activities dictate that OSRs who call or visit "a beneficiary who was referred by a friend, provider, provider's secretary, [or] any other third-party without obtaining a [S]cope of [A]ppointment prior to contact and member attestation form (testimonial)" should be terminated from employment with MMM.

On March 14, 2014, CMS Caseworker E. Dumas referred a beneficiary's complaint to MMM, which was reported through 1-800-MEDICARE and alleged marketing misrepresentation. MMM Compliance Auditor Specialist Frances Benítez Fernández ("Auditor Benítez") commenced a compliance investigation regarding the complaint on March 30, 2014. At the end of the investigation, on April 11, 2014, Auditor Benítez concluded in her Compliance Investigation Report that Rodríguez-Cardi had "incurred in a door-to-door

solicitation" by arriving at beneficiary Ms. Doe's[4] residence "without prior and valid authorization."  Finding that the "Scope of Appointment" and "attestation" were improperly obtained -- Rodríguez-Cardi acquired them after appearing at Ms. Doe's residence "without a proper prior contact" -- Auditor Benítez recommended that Rodríguez-Cardi's employment be terminated.

MMM Human Resources Director Gloribel Rivera-Cabrera ("Director Rivera") upheld Auditor Benítez's recommendation after evaluating Auditor Benítez's Compliance Investigation Report, Rodríguez-Cardi's record, training, and disciplinary and performance history, as well as applicable policies and procedures regarding disciplinary action.  On April 16, 2014, MMM terminated Rodríguez-Cardi's employment.[5]  Her duties and assigned providers were distributed among eight other MMM employees, ranging in age from twenty-seven to forty years old.

Rodríguez-Cardi contends that, prior to her termination, some of her colleagues called her "la mayor del grupo" ("the oldest in the group").  She additionally claims that two OSRs referred to her as "la vieja" ("the old lady"), called her hairstyle old-

---

[4]  Like the district court, we do not disclose the beneficiary's name for confidentiality reasons.

[5]  Subsequently, in June 2014 and October 2015, MMM also terminated two other OSRs -- aged 29 and 34 -- who incurred in a violation of unsolicited contact with a beneficiary.

fashioned, and remarked that she had an "old woman's coat." Moreover, she says that these OSRs mocked her cell phone, which she had owned for twelve years and did not have internet access, and her car, a 1987 S.U.V. model, for being old. In her deposition, Rodríguez-Cardi claimed that she told Rodríguez-Delgado that coworkers "were making out of place comments" and "bothering" her; even so, she admitted that she had never formally complained about any alleged mistreatment or unwelcome age-related comments in writing.

## B. Procedural History

On November 25, 2014, Rodríguez-Cardi filed a complaint in the U.S. District Court for the District of Puerto Rico against MMM. In her amended complaint filed on January 29, 2015, Rodríguez-Cardi asserted claims for: (1) age discrimination, hostile work environment, and retaliation under the ADEA, 29 U.S.C. § 621 et seq.; (2) age discrimination under Law 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29, § 146 et seq., Puerto Rico's general antidiscrimination statute; (3) retaliation under Law 115 of December 20, 1991, as amended, P.R. Laws Ann. tit. 29, § 194 et seq., Puerto Rico's general anti-retaliation statute; (4) unjust discharge under Law 80 of May 30, 1976, as amended, P.R. Laws Ann. tit. 29, § 185a et seq., Puerto Rico's Unjust Discharge Act; and (5) damages under Articles 1802 and 1803 of the Puerto Rico Civil

Code, P.R. Laws Ann. tit. 31, §§ 5141, 5142, Puerto Rico's general tort statute.  On June 8, 2015, the district court granted MMM's motion to dismiss Rodríguez-Cardi's retaliation claims under the ADEA and Law 115.  MMM then moved for summary judgment on Rodríguez-Cardi's remaining claims.

On March 30, 2018, the district court entered an opinion and order granting MMM's motion for summary judgment.  Rodríguez-Cardi v. MMM Holdings, Inc., No. 14-1854, 2018 WL 1725549, at *1 (D.P.R. Mar. 30, 2018).  The district court determined that Rodríguez-Cardi failed to provide any evidence to show that MMM's "articulated reason for its decision to terminate [her was] pretextual, much less a pretext to discriminate against [her] because of her age."  Id. at *9.  Therefore, the district court found, Rodríguez-Cardi failed to meet her burden under the burden-shifting standard for ADEA employment claims.  Id. at *8-9.  The district court further noted that the "same actor inference" provided an additional ground to dismiss Rodríguez-Cardi's ADEA claim.  Id. at *10 n.31.  According to the same actor inference, "[i]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer."  LeBlanc v. Great Am. Ins. Co., 6 F.3d

-10-

836, 847 (1st Cir. 1993) (quoting Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)).

The district court also found that the lack of evidence of pretext warranted "dismissal as a matter of law" of Rodríguez-Cardi's age discrimination claim under Law 100. Rodríguez-Cardi, 2018 WL 1725549, at *11. Furthermore, the court determined that Rodríguez-Cardi's hostile work environment claim also failed because she provided insufficient evidence that she was harassed in a manner that was "sufficiently severe or pervasive to alter the conditions of [her] employment," considering the "totality of circumstances." Id. at *12. Finally, the court also dismissed Rodríguez-Cardi's Law 80 claim, finding that MMM terminated her "for reasons linked to the proper and normal operation of the establishment" rather than a "mere whim." Id. at *13. Accordingly, the court granted MMM's motion for summary judgment and dismissed all of Rodríguez-Cardi's remaining claims. Id. Rodríguez-Cardi timely appealed.

On appeal, Rodríguez-Cardi challenges only the dismissal of her age discrimination claim under the ADEA. She argues that the district court misapplied the summary judgment standard and erred in holding that no reasonable factfinder could determine that MMM's reasons for terminating Rodríguez-Cardi were pretextual.

-11-

## II.  Discussion

We review a district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor.  Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4 (1st Cir. 2015); Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).  Summary judgment may be granted only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Ameen v. Amphenol Printed Circuits, Inc., 777 F.3d 63, 68 (1st Cir. 2015) (citation omitted).  "Facts are material when they have the 'potential to affect the outcome of the suit under the applicable law,'" Cherkaoui v. City of Quincy, 877 F.3d 14, 23 (1st Cir. 2017) (quoting Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)), and "[a] dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party,'" Sánchez, 101 F.3d at 227 (quoting Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 352 (1st Cir. 1992)).[6]

---

[6]  The district court clearly employed the correct standard of review for summary judgment.  Rodríguez-Cardi's contentions to the contrary, implying that a "debate" over any issue must be tried before a jury, lack merit.

-12-

In a wrongful discharge case under the ADEA, the plaintiff bears the burden of proving that her age was the "determinative factor in [her] discharge, that is, that [she] would not have been fired but for [her] age." Freeman v. Package Mach. Co., 865 F.2d 1331, 1335 (1st Cir. 1988). Where, as here, the plaintiff does not have direct evidence of discrimination, we apply the burden-shifting framework outlined in McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802-05 (1973), which has been adopted for ADEA cases. Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir. 1995).

Under the McDonnell Douglas framework, a plaintiff alleging an ADEA claim for discriminatory firing has the initial burden to set forth a prima facie case by showing that (i) she was at least forty years old at the time of her termination; (ii) she was qualified for the position she held and was meeting the employer's reasonable expectations; (iii) she was terminated from her employment; and (iv) "the employer subsequently filled the position, demonstrating a continuing need for the plaintiff's services." Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 447–48 (1st Cir. 2009). If the plaintiff establishes her prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. Id. at 447. If the employer articulates such a reason, the burden shifts back to the

-13-

plaintiff, who must then show, by a preponderance of the evidence, that the employer's proffered reason for the adverse employment action was pretextual, and "that age was the 'but-for' cause of the employer's adverse action."  Id. at 447-48 (quoting Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 177 (2009)).

On appeal, the parties assume -- as the district court did below -- that Rodríguez-Cardi had successfully established a prima facie case of age discrimination, which MMM properly rebutted by articulating a legitimate, nondiscriminatory reason for Rodríguez-Cardi's termination -- to wit, her ongoing performance problems.  The parties' arguments are thus limited to the pretext inquiry of the burden-shifting framework.  Likewise, we limit our analysis accordingly.

To defeat MMM's summary judgment motion, Rodríguez-Cardi had to produce sufficient evidence to support an inference that MMM's proffered reason was pretextual and that she was in fact terminated because of her age.  Rodríguez-Cardi advances various contentions she claims would allow a reasonable jury to determine -- contrary to the district court's conclusions -- that MMM's reason for terminating her was pretextual.

First, Rodríguez-Cardi argues that MMM's articulated reason for her termination -- her allegedly unsolicited door-to-door contact with Ms. Doe, a Medicare beneficiary -- is false,

which constitutes evidence of pretext. According to Rodríguez-Cardi, MMM's investigation of Ms. Doe's complaint -- which Rodríguez-Cardi claims was related to the cost of the health plan as opposed to her alleged unsolicited contact -- was "flawed" because: Auditor Benítez did not know that Ms. Doe lived in a retirement home and "sales representatives [are] allowed to visit [] retirement home[s] for propaganda, sales and business purposes"; it was Ms. Doe who approached Rodríguez-Cardi, not the other way around; and Rodríguez-Cardi then completed the required documentation. Based on these facts, Rodríguez-Cardi contests MMM's interpretation of its policies and procedures and claims that she did not violate any of their provisions. Rodríguez-Cardi further argues that determining whether MMM "believed" its reason for terminating her employment "to be real" is inextricably intertwined with motive and intent, and summary judgment is improper "when motive and intent play[] leading roles."

Contrary to Rodríguez-Cardi's contentions, summary judgment is not necessarily improper just because a case involves motive or intent. See Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990) ("Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate."); see also Mesnick, 950 F.2d at 822, 829 (affirming summary judgment due to "plaintiff's failure to adduce

-15-

evidence supporting an inference of discriminatory or retaliatory motive").  Because pretext "means something worse than a business error," Ronda-Pérez v. Banco Bilbao Vizcaya Argentaria-P.R., 404 F.3d 42, 45 (1st Cir. 2005) (quoting Kulumani v. Blue Cross Blue Shield Ass'n, 224 F.3d 681, 684 (7th Cir. 2000)), the factfinding inquiry at the pretext stage of the ADEA burden-shifting framework "focuses on 'whether the employer believed its stated reason to be credible,'" and not on whether the employer was right.  Woodman, 51 F.3d at 1093 (emphasis in original) (quoting Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1118 (1st Cir. 1993)); see also Pearson v. Mass. Bay Transp. Auth., 723 F.3d 36, 41 (1st Cir. 2013) ("[M]ere questions regarding the employer's business judgment are insufficient to raise a triable issue as to pretext." (alteration in original) (quoting Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 140 (1st Cir. 2012))).  Accordingly, to survive summary judgment, "[i]t is not enough for [Rodríguez-Cardi] merely to impugn the veracity of the employer's justification" or to point to flaws in MMM's investigation.  Mesnick, 950 F.2d at 824.  Instead, she "must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover the employer's real motive: age discrimination.'"  Id. (quoting Medina-Muñoz, 896 F.2d at 9).  This she cannot do.

Rodríguez-Cardi has not pointed us to any evidence in the record from which a reasonable jury might infer that Auditor Benítez's investigation was cloaked in age-based animus. Nor has she pointed us to evidence on the record to dispute Director Rivera's testimony that she honestly believed the veracity of both the Compliance Investigation Report and Rodríguez-Cardi's documented history of poor performance, and that she relied on that belief in making her decision to recommend Rodríguez-Cardi's termination. In fact, as the district court noted, Rodríguez-Cardi "does not even suggest that [Auditor] Benítez or [Director] Rivera were motivated by any illegal or inappropriate animus when conducting the investigation, when evaluating the findings of the investigation, and does not contest her prior disciplinary action and history of performance productivity problems." Rodríguez-Cardi, 2018 WL 1725549, at *10. Although she challenges the accuracy of MMM's investigation and interpretation of its own policies and procedures, when faced with employment decisions that lack a clear discriminatory motive, "[c]ourts may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." Mesnick, 950 F.2d at 825.

Next, Rodríguez-Cardi avers that MMM changed its reasoning for her termination from her "unsolicited contact" with

-17-

Ms. Doe to her poor performance record, which she argues "is evidence of pretext." Rodríguez-Cardi claims that at the time of her termination, she was told that she was being fired for the "allege[d] unsolicited contact" and "[n]othing else." Two out of three witnesses deposed in this case,[7] Rodríguez-Cardi argues, mentioned only the unsolicited contact as the grounds for her termination. Because MMM did not allege termination based on her performance until it filed its answer to her complaint, Rodríguez-Cardi's argument goes, these "[c]hanging explanations raise[] genuine issue[s] of material fact with regard to the veracity of the non-discriminatory reason articulated."

While Rodríguez-Cardi correctly points out that an employer's "[c]hanging explanations" for an adverse employment action can be evidence of pretext, she has not provided any evidence to show that MMM has changed its reasoning for her termination. See Domínguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 431-32 (1st Cir. 2000) ("[W]hen a company, at different times, gives different and arguably inconsistent explanations [for an employee's termination], a jury may infer that the articulated reasons are pretextual."). In their depositions, Rodríguez-Delgado, Auditor Benítez, and Director Rivera all testified that

---

[7] Rodríguez-Cardi and three witnesses (Rodríguez-Delgado, Auditor Benítez, and Director Rivera) were deposed.

MMM's reasoning for terminating Rodríguez-Cardi's employment was based on the outcome of the Compliance Investigation Report, which concluded that Rodríguez-Cardi had engaged in a grave violation of federal regulations by initiating an unsolicited contact with a potential Medicare beneficiary. Director Rivera's testimony that she also considered Rodríguez-Cardi's poor performance record in addition to the Compliance Investigation Report hardly shows that MMM changed its reasoning for her termination; if anything, it provides support to MMM's claim that it completed a thorough review of Rodríguez-Cardi's record before making a final decision. ("That is what is normally done in these cases, all the criterias [sic] are evaluated. All these criterias [sic] are taken into consideration for any termination, even when the breach . . . was a recommendation of termination . . . ."). Additionally, Rodríguez-Delgado noted in his deposition that Rodríguez-Cardi, prior to her termination, "had several write-ups that [he] had to document." Accordingly, the record does not contain evidence from which a reasonable jury could infer that MMM changed its reasoning for terminating Rodríguez-Cardi, capable of supporting the conclusion that MMM's articulated reason is pretextual.

Rodríguez-Cardi next contends that she was "not being treated the same way [as] similarly situated employees." As an OSR, Rodríguez-Cardi claims, she was subjected to the "worst

cases," among which she includes "potential affiliates [who] already had better health plans that would never change to MMM" and "the farthest cases" from the office.  Moreover, she asserts, providers were "removed from her list," and she "was the only sales person that was not given the clients list for the Open Enrollment season."  As the "disparity of treatment afforded to [her] is evident," her argument goes, "pretext and discrimination can be inferred."

It is true that evidence of an employer's more favorable treatment of "similarly situated employees" can be evidence of pretext.  See Straughn v. Delta Air Lines, Inc., 250 F.3d 23, 43-44 (1st Cir. 2001).  Yet, Rodríguez-Cardi fails again to point to any evidence on the record showing that she was treated differently than other OSRs similarly situated.  Her claim that she was given the "worst cases," which were the "farthest" from the office and involved clients who already had better insurance, is unsupported by the record.  Moreover, Rodríguez-Cardi admitted that "all other [OSRs] also complained about [Rodríguez-Delgado's] alleged preference [for] three or four" coworkers in assigning cases, which undercuts her argument that she alone was treated less favorably. Additionally, the record reveals that, because as an Independent Promoter Rodríguez-Cardi had worked the leads of potential affiliates prior to her employment as an OSR, MMM did not provide

her with the client list for Open Enrollment based on its understanding that a conflict of interest would exist if as an OSR she worked the leads that she had generated as an Independent Promoter, thus receiving double compensation. Rodríguez-Cardi does not provide evidence to contest MMM's explanation that it did not provide her the client list for Open Enrollment pursuant to company policy, based on her prior work as an Independent Promoter and potential conflicts of interest. Nor does she point to evidence that other OSRs were allowed to work the leads that they had previously generated as Independent Promoters. Consequently, Rodríguez-Cardi has not shown that similarly situated employees were treated more favorably than her in order to support an inference of pretext.

In addition, Rodríguez-Cardi argues that she was subject to age-related "derogatory comments, jokes and offensive language," which violated MMM's Anti-Discrimination Policy, yet MMM did nothing to address the situation. According to Rodríguez-Cardi, this constitutes evidence of pretext because MMM failed to follow its own policy.

Evidence that the employer deviated from its standard procedure or policies in taking an adverse employment action against a plaintiff may be relevant to the pretext inquiry. See Acevedo-Parrilla, 696 F.3d at 142-43 (noting that, where the

-21-

employer had fired the plaintiff without first implementing progressive discipline and obtaining approval by the Human Resources Department, the employer's failure to adhere to a policy requiring "progressive disciplinary program" and that "all disciplinary actions (including termination)" be approved by the Human Resources Department was relevant to the plaintiff's burden of demonstrating pretext); Brennan v. GTE Gov't Sys. Corp., 150 F.3d 21, 29 (1st Cir. 1998) (finding that evidence that employer had not followed its standard procedure for laying off employees during reduction in force was "directly relevant to [laid-off employee's] burden of demonstrating pretext"). The rationale is that if an employer has a policy or procedure that governs a specific situation but fails to adhere to the same in taking an adverse employment action against an employee, then it might be inferred that the reason articulated for taking the adverse employment action against the employee was not true. Yet, Rodríguez-Cardi points to no evidence indicating that MMM's Anti-Discrimination Policy covered the situations that led to her termination or that MMM's alleged deviation from its Anti-Discrimination Policy (i.e., its failure to investigate Rodríguez-Cardi's alleged complaints) had any bearing in the termination decision or was even relevant to it.

Finally, Rodríguez-Cardi contends that the district court failed to consider the "totality of the circumstances" of her case and, instead, "segregated [her] evidence" and "ignored the vast majority of it as irrelevant." The district court did no such thing. It carefully analyzed Rodríguez-Cardi's arguments and the evidence she offered to support her claims and correctly concluded that the record was devoid of evidence from which a reasonable jury could conclude that MMM's stated reason for terminating Rodríguez-Cardi's employment was a mere pretext of age discrimination. Reviewing de novo we reach the same conclusion. The totality of the circumstances shows that Rodríguez-Cardi had a meticulously recorded (and uncontested) history of poor performance, and that she had been issued a Final Written Warning, which notified her that further underperformance could lead to termination. The record also shows that MMM conducted a compliance investigation into allegations that Rodríguez-Cardi initiated unsolicited contact with a beneficiary, which MMM considers a serious infraction. Finally, the record demonstrates that at the end of the investigation, Auditor Benítez recommended termination of Rodríguez-Cardi's employment, which Director Rivera upheld after reviewing the Compliance Investigation Report and examining Rodríguez-Cardi's past performance. The totality of the circumstances, rather than proving Rodríguez-Cardi's pretextual

argument, instead show a lack of foundation for Rodríguez-Cardi's claim.[8]

---

[8] Rodríguez-Cardi also challenges the district court's conclusion that the "same actor inference" supports dismissal of her age discrimination claim inasmuch as Rodríguez-Delgado was the person that hired Rodríguez-Cardi and then fired her only ten months later. See LeBlanc, 6 F.3d at 847 ("[I]n cases where the hirer and the firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." (quoting Stone, 945 F.2d at 797)). Rodríguez-Cardi urges this court to limit the application of the same actor inference, as she claims other courts have done, but does not provide adequate reasoning to support her argument. We thus deem her argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones."). We further note that although Rodríguez-Cardi cites several cases she claims support her argument that the same actor inference should be limited, those cases are inapposite in light of her concession that Rodríguez-Delgado both hired and fired her within a ten-month span, see, e.g., Quinby v. WestLB AG, No. 04-7406, 2007 WL 1153994, at *8 (S.D.N.Y. Apr. 19, 2007) (refusing to apply the same actor inference because there were disputed facts as to whether the plaintiff had been hired and fired by the same person and four years had passed between the plaintiff's hiring and her termination), or were conveniently cited out of context, see, e.g., Williams v. Vitro Servs. Corp., 144 F.3d 1438, 1443 (11th Cir. 1998) (cited by Rodríguez-Cardi for the proposition that the court had "decline[d] to accord to th[e] same actor factual circumstance a presumption that discrimination necessarily was absent" from the employer's decision, but omitting that the court nonetheless allowed a "permissible inference that no discriminatory animus motivated [the employer's] actions") (emphasis in original) (internal quotation marks omitted).

-24-

### III.  <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's order.

**<u>Affirmed</u>**.