**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

No. 24-2584

_____

CHRISTINA GRASTY,

Appellant

v.

DAVITA, INC.,

d/b/a DaVita South Broad Street Dialysis Center

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-02476)
District Judge: Honorable Richard B. Surrick

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on June 10, 2025

Before: KRAUSE, PORTER, and AMBRO, *Circuit Judges*

(Opinion Filed: August 18, 2025)

_____

OPINION*

_____

**AMBRO**, *Circuit Judge*

DaVita, Inc. fired Christina Grasty after she injured her back while on the job. She sued DaVita, alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-117. DaVita moved for summary judgment, maintaining it fired her for unprofessional conduct. The District Court granted that motion, and we affirm.

## I.     BACKGROUND

### A.  Factual Background

Grasty worked at DaVita for nearly seven years before she was fired. It provides kidney dialysis services, and Grasty held a variety of patient-care roles there.

During her time there, Grasty incurred many documented disciplinary infractions. Among them were instances of unprofessional behavior toward patients and coworkers, including swearing and yelling at patients. In 2019, Grasty was given oral and written warnings about her behavior. And in October 2019, Grasty was issued a final written warning following reports that she had spoken "disrespectfully [to] and use[d] profane language" toward a patient. App. 278. Grasty admits that the final written warning meant that "[i]f anything else happened[,] [DaVita] could either suspend or terminate [her]." App. 195.

_____

\* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

In January 2020, Grasty injured her back while lifting a patient from a wheelchair. Soon after, she sought medical care. Her physicians determined that she had "injured her axial spine and extremities," App. 414, and provided her a doctor's note stating that "bending, lifting and twisting" may exacerbate her injury, so she should avoid "lifting, pushing/pulling patients." App. 348-51.

When Grasty returned to work, she was unable to perform the "lifting, pushing, and [] pulling" portions of her job. App. 189. She informed her supervisor that she had been injured and was in pain, though the parties contest whether she communicated any specific job restrictions. By her own admission, Grasty was aided in tasks she was incapable of or was otherwise allowed to opt out of those tasks and swap patients.

Less than two weeks after her injury, Grasty attended a staff meeting where she allegedly "screamed . . . , swore at . . . , and directed threatening body language" toward a coworker, Morgan Duhe. App. 331. Grasty's manager, Nora Marinaccio, witnessed and documented that confrontation. Duhe also submitted an email complaint about the incident, documenting her account of the meeting. Later, Marinaccio took a statement from Duhe but not from Grasty. She then reprimanded Grasty and submitted a formal disciplinary write-up. Ultimately, DaVita fired Grasty 23 days after her injury and 11 days after the staff meeting.

DaVita maintains a progressive discipline policy that provides incremental steps in the disciplinary process, including a suspension period before termination. The policy also states that "DaVita may initiate or impose discipline at the level it believes, in its sole discretion, is most appropriate," and may "terminate any teammate[] . . . without following

3

any particular series of steps." App. 305. Grasty's termination did not follow the incremental steps outlined in the policy. Instead, her behavior at the staff meeting caused management to move straight to termination.

## B. Procedural Background

After being fired, Grasty sued DaVita, alleging violations of the ADA under three theories: (1) discriminatory termination, (2) retaliation for her accommodations request, and (3) failure to accommodate. DaVita moved for summary judgment. The District Court granted its motion on all three claims, and Grasty timely appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction to review the District Court's final order under 28 U.S.C. § 1291. "We review a grant of summary judgment de novo, using the same standard as the District Court." *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 221 (3d Cir. 2024). Summary judgment "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011) (internal quotation marks omitted).

## III. DISCUSSION

### A. Discriminatory and Retaliatory Termination

Grasty first argues that she was terminated because of her disability and in retaliation for requesting a work accommodation. These arguments fail.

4

"[T]he burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to ADA disparate treatment and retaliation claims." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). Under that framework, a plaintiff must first establish a *prima facie* claim of discrimination or retaliation. *Id*. If she does, "the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *Id*. (internal quotation marks omitted). "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse employment action for a non-discriminatory reason." *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (internal quotation marks omitted).

At the third and final step, the plaintiff has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Shaner*, 204 F.3d at 500. "In pretext cases of the type at issue here, we have held [] a jury must be charged that in order to find for the plaintiff, it must conclude that consideration of the impermissible factor was a determinative factor in the adverse employment action." *Watson v. Se. Pa. Transp. Auth.*, 207 F.3d 207, 215 (3d Cir. 2000) (internal quotation marks omitted).

When a defendant employer presents a credible reason for termination, we can skip the first two steps and move straight to the final step, pretext. *See, e.g.*, *Keller v. Orix Credit*

5

*All., Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). We do so here because DaVita gives one such credible reason—that Grasty was terminated for her behavior.

Grasty makes three pretext arguments: (1) her testimony "paint[s] a much different picture of the meeting where she was accused . . . of acting unprofessionally," Opening Br. 16, negating DaVita's proffered reason for terminating her; (2) DaVita did not give her the opportunity to "give her side of the story," and this one-sided investigation in lieu of the typical progressive disciplinary process suggests discriminatory animus, *id.*; and (3) the short time between her request for an accommodation and her termination creates a presumption of discriminatory animus.[1]

Grasty's first argument—that she did not behave unprofessionally and was not aggressive at the staff meeting, which calls into question DaVita's "unprofessional conduct" explanation—is contradicted by the record. Grasty relies only on her own testimony, in which she asserted that she did not raise her voice or swear at the meeting. But two other employees were at the January 2020 staff meeting, witnessed Grasty's behavior, and testified that she had shouted, pointed, and swore at a coworker during the meeting. And DaVita highlights a history of unprofessional behavior by Grasty. Nearly a

---

[1] On appeal, Grasty raises a mixed-motive theory as an alternative to her primary pretext theory. In mixed-motive cases, "a plaintiff need only show that the unlawful motive was a substantial motivating factor in the adverse employment action." *Watson*, 207 F.3d 207, 215 (3d Cir. 2000) (internal quotations omitted). "[C]laims based on circumstantial evidence" are "assessed under the burden-shifting framework established in *McDonnell Douglas . . .*, while claims based on direct evidence" are "assessed under the mixed-motive framework set forth in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 276–77 (1989) (O'Connor, J., concurring)." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012). Because Grasty presents no direct evidence of DaVita's discrimination or retaliation, she cannot succeed on her mixed-motive theory.

year prior to her termination, she received a written warning for failing to follow infection control procedures and for other unprofessional behaviors. And four months prior to her termination, she was issued an oral warning for "[u]nprofessional conduct," App. 280, which was escalated to a final written warning after reports that Grasty had shouted and sworn at a patient.

For Grasty's claims to survive summary judgment with only her testimony as supporting evidence, that testimony must be sufficient for a rational factfinder to credit them over evidence to the contrary. *Gonzalez v. Sec'y of Dept' of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (rejecting an affidavit when the assertions within it were "impeached by a well supported showing to the contrary"). No reasonable fact finder would do so here. DaVita's proffered reason for Grasty's termination is supported by evidence spanning more than a year and corroborated by multiple sources. "In order to raise sufficient disbelief [to establish pretext], [Grasty's] evidence must indicate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons to satisfy the factfinder that the employer's actions could not have been for nondiscriminatory reasons." *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-45 (3d Cir. 2015) (internal quotation marks omitted). Her evidence does not clear that hurdle.

Next, Grasty argues DaVita conducted an inadequate investigation into the allegations about her behavior at the January 2020 staff meeting. In her view, this demonstrates discrimination because she was not given an opportunity to give her side of the story. But a mere challenge to the sufficiency of an employer's internal investigation

7

does not establish pretext. *Rodriguez-Cardi v. MMM Holdings*, 936 F.3d 40, 48 (1st Cir. 2019) ("[T]o survive summary judgment, it is not enough for [a plaintiff] merely to impugn the veracity of the employer's justification or to point to flaws in [a defendant's] investigation." (internal quotation marks omitted)); *Nelson v. Lake Elmo Bank*, 75 F.4th 932, 938 (8th Cir. 2023) ("A failure to interview some witnesses does not automatically create evidence of pretext."); *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023) ("[A]lleged imperfections in an investigation are not sufficient . . . to support a finding of pretext."). Rather, to raise an inference of pretext, a plaintiff must "elucidate specific facts" showing why a failure to interview a particular witness could "enable a jury to find that the reason given [for termination] is not only a sham but a sham intended to cover the employer's real motive: [] discrimination." *Rodriguez-Cardi*, 936 F.3d at 48 (internal quotation marks omitted). Because Grasty cannot point to any such facts in the record, this argument fails. Again, Grasty's challenge to the sufficiency of DaVita's investigation does not overcome the wealth of evidence that DaVita's termination resulted from her unprofessional behavior.

Grasty similarly faults DaVita's decision to depart from its usual progressive disciplinary policy as evidence of discriminatory animus. But this argument fails to engage with the animating question of pretext analysis: whether "consideration of the impermissible factor was a determinative factor in the adverse employment action." *Watson*, 207 F.3d at 215 (internal quotation marks omitted). DaVita has pointed to evidence it would have terminated Grasty absent her injury and request for accommodation and had considered doing so prior to her injury. Absent contrary evidence, DaVita's alleged

departure from progressive disciplinary principles is not sufficient to rebut its non-discriminatory reason for terminating Grasty. *See Wiest v. Tyco Elecs. Corp.*, 812 F.3d 319, 333 & n.10 (3d Cir. 2016) (holding that employer's decision to terminate employee without following progressive disciplinary practices was not evidence that it had considered protected actions in its decision to terminate).[2]

Finally, Grasty asserts that "[t]he sequence of events, [and] the relative temporal proximity," paired with other indirect evidence discussed above, "provide the type of inconsistencies and contradictions that undermine [DaVita's] proffered legitimate business reason for [her] termination." Opening Br. 17. This argument also fails.

We generally analyze temporal proximity under the causation element of *prima facie* discrimination and retaliation claims, not as part of a pretext analysis. *E.g.*, *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 178 (3d Cir. 1997) ("It is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn."). Even assuming the argument applies to pretext, "an intervening legitimate reason to take an adverse employment action dispels an inference of retaliation

---

[2] Though *Wiest* concerns retaliation claims under the Sarbanes-Oxley Act, 18 U.S.C. § 1515A, our Court has applied anti-retaliation principles from claims under one statute to claims under other similar retaliation-related statutes. *See, e.g.*, *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 564 (3d Cir. 2002) (applying retaliation principles taken from actions under the National Labor Relations Act to an ADA retaliation case); *DiFiore v. CSL Behring, LLC*, 879 F.3d 71, 77 (3d Cir. 2018) (applying Title VII and Age Discrimination in Employment Act retaliation principles to a False Claims Act retaliation case, and discussing the Supreme Court's history of extending anti-retaliation principles across employment statutes).

based on temporal proximity." *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 628 (6th Cir. 2013) (internal quotations omitted); *Wiest*, 812 F.3d at 332 ("[T]he record overwhelmingly demonstrates 'legitimate intervening event[s],' such that any causal connection that could be derived from [temporal proximity] was severed." (first alteration in original)). Legitimate intervening events here led to Grasty's termination. Her engagement in a loud, heated exchange at work breaks any causal link between her physical injury and the request for accommodation on the one hand, and her termination on the other.

Even considering Grasty's three arguments collectively, they amount to little more than a restatement of her allegations and *prima facie* case while failing to establish pretext. *See Willis*, 808 F.3d at 650 (finding that circumstantial evidence—including hiring and firing patterns, observations of similar behavior in other employees who were not similarly disciplined, and rumors of discrimination—were collectively insufficient to establish pretext).

### B. Failure to Accommodate

We also affirm the District Court's grant of summary judgment on Grasty's failure-to-accommodate claim. An employer violates the ADA by "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Reasonable accommodations include "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

Grasty contends "that her job duties were unchanged and she was put in a position that violated her light duty work restrictions." Opening Br. 18. In support, she cites the testimony of Marinaccio that the latter did not recall whether there were any formal restrictions placed on Grasty's duties.

"[A] party opposing . . . summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And Grasty's own testimony confirms that she was accommodated.

She was given assistance to lift, pull and push "[i]f it was available." App. 627. When assistance was not available, Grasty was able to "t[ell] the nurse, and they either, like, swapped the patient or I just told them I couldn't do it." App. 627. So DaVita did make "[m]odifications or adjustments to . . . the manner or circumstances under which the position held . . . is customarily performed, [and] that enable[d]" Grasty "to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii).

\* \* \*

For these reasons, we affirm.

11